CASTANA SAVINGS BANK, Appellant, v. J. L. RINEHART et al., Appellees.

PLEADING: Issues, Proof, and Variance—Want of Consideration. In an action by the indorsee of a negotiable promissory note, a plea by the maker of want of consideration is not supported by testimony to the effect that the original payee had agreed to pay the note.

*Appeal from Monona District Court.*—MILES W. NEWBY, Judge.

FEBRUARY 12, 1924.

ACTION at law upon four promissory notes for a total sum of $8,100.   The makers of the notes are the defendants Rinehart and Dickson.   The payee and indorser of the notes is the defendant Gordon, who makes no defense.   The defendants Rinehart and Dickson set up the defense of want of consideration. There was a verdict for the defendants, and plaintiff appeals.— *Reversed and remanded.*

*C. E. Cooper* and *Jepson, Struble, Anderson & Sifford,* for appellant.

*Prichard & Prichard,* for appellees.

EVANS, J.—The material facts are not in dispute. In August, 1918, defendant Gordon sold to defendants Rinehart and Dickson a certain stock of merchandise, referred to in the record as the "store," for $16,100. For a part of this purchase price, the purchasers executed their note to Gordon for $8,100. This note was drawn as due and payable in August, 1919. Shortly after its execution, it was negotiated by Gordon to the plaintiff bank for full value. Upon its maturity, and in August, 1919, it was renewed by a new note of like import, signed by the same makers and indorsed by Gordon to the plaintiff bank. This note matured, by its terms, February 1, 1920. Prior to that date, and in January, 1920, Gordon had bought back a one-half interest in said store for $8,100, the claim of defendants being that this was to be paid by a return of their $8,100 note. The note maturing February 1, 1920, was not paid upon that date or since. It was renewed, however, on May 19, 1920, by the giving of four notes for the total amount, signed by the same makers and indorsed by Gordon to the plaintiff. These are the notes in suit. Rinehart was the sole witness for the defendants. Much of his testimony was inadmissible as incompetent, and some of it was objectionable as being indefinite and mere conclusion. The claim in argument which is made for his testimony is that it shows that, when Gordon bought back a half interest in the store, the bank agreed to surrender and release the note of the defendants held by it. Pending a motion by plaintiff for a directed verdict at the close of defendants' evidence, Rinehart was recalled for further redirect examination, and testified as follows:

"Q. Mr. Rinehart, at the time—or at what time was it that, in relation to the sale of your stock of goods to Mr. Gordon, that you had this conversation and agreement with Mr. Parker of the Castana Savings Bank? A. At the time the note was to be given over to us. At the time of the sale of the stock. Q. Now, what consideration were you to receive for your transfer of one-half interest of the stock of goods to Mr. Gordon? A. Our original notes back. Q. And was that at the time you had your conversation with Mr. Parker? A. Yes, sir. Q. And return of your note. Was that also to carry with it the release

of your obligation? A. With the bank. Q. To the bank? A. Yes, sir."

Thereafter, on cross-examination, he testified more definitely as follows:

"Q. Mr. Rinehart, the note that you gave to Mr. Gordon for $8,100 at the time you purchased the stock from him matured in August, 1919. At that time, Mr. Gordon didn't own any interest in the store yet, did he? A. I don't think so. Myself and Mr. Dickson renewed our note at that time, and gave another one in place of the original. We got the original one back at that time. Then there was a proposition made soon after that by me, to sell a one-half interest to Mr. Gordon. This was for the amount of the note, $8,100. That deal was not finally consummated until January, 1920, and, at the time the deal was consummated, there was no change in the indebtedness to the bank, —that is, the note that we had given, the second note that we had given, had not matured yet, and there was no change in the indebtedness to the bank. There was no change in the indebtedness to the bank, and the second note that we had given matured on February 1, 1920, and there was no change in the indebtedness until May 19, 1920, at which time these renewal notes that are in the suit were given. I had a talk with the bank shortly before these renewal notes were given, in May, 1920. About a week before. It would be about May 12th. This was in the bank at Castana. Mr. Dickson and Mr. Parker and myself were present. I don't remember that Mr. Bauman was present."

The real substance of this defendant's testimony which indicated his conception of his real defense to the notes in suit was that, at the time they were executed, he was assured that Gordon would pay them, and that he would never be called upon to do so. No fraud is charged. That the plaintiff was the bona-fide holder for value of the original note is without dispute. That it was likewise the holder for value of the first renewal note is also without dispute. Neither of these notes was subject to any defense, as against the plaintiff. Neither of them lacked consideration. Without dispute, the notes in suit were given in renewal of the first renewal note held by the plaintiff. If there was consideration for the surrendered note, how could it be said that there was none for the renewal note? The argument for

appellees at this point is that the surrendered note had been satisfied by an oral agreement to release. Such was not the defense pleaded. Such note was not in fact released. On the contrary, the notes in suit were taken therefor. The trial court instructed on this subject by Instruction 9, as follows:

"You are further instructed, in connection with the foregoing charge, that a consideration passing between the defendant M. L. Gordon and the defendants Rinehart and Dickson would not release defendants Rinehart and Dickson from responsibility upon these notes, but the consideration, if any, to release defendants Rinehart and Dickson must have passed between the said plaintiff bank and the said defendants Rinehart and Dickson."

The verdict rendered for the defendants was contrary to this instruction. There was no pretense in the evidence that any consideration passed as between the plaintiff bank and the defendants. The only claim of the witness was that consideration passed from the defendants to Gordon, and that Parker, the cashier of the plaintiff bank, assented to it. No benefit passed to the bank. Granting that ordinarily a consideration which operates as a detriment to one of the parties is sufficient support to a contract to make it binding upon both, yet the burden would be upon the defendants to show that Parker had authority to bind the bank to a burdensome agreement which, on its face, carried no benefit whatever to such bank. If Parker had made such an agreement on his own behalf, the question would be a simpler one for the defendants.

Taking the record as it is, it must be held that the defense of want of consideration was without sufficient support in the evidence to warrant the verdict rendered. The judgment below is, accordingly, reversed.—*Reversed and remanded.*

ARTHUR, C. J., PRESTON and FAVILLE, JJ., concur.